IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERMAN PENA and GLORIA PENA, on behalf of themselves and the classes defined herein, | ) ) ) ) | |
| Plaintiffs, | ) ) | 07 C 552 |
| v. | ) ) ) | Judge Ronald A. Guzmán |
| FREEDOM MORTGAGE TEAM, INC. GRACO FUNES, AMERICAN HOME MORTGAGE CORP., doing business as AMERICAN BROKERS CONDUIT, AMERICAN HOME MORTGAGE SERVICING, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., DOES 1-5, PROBE INTERNATIONAL, INC., ALBERT V. DILUIGI and DOES 6-10, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued defendants for their alleged violations of the Fair Housing Act, 42 U.S.C. § 3605, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, the Illinois Consumer Fraud Act and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2, the Truth In Lending Act, 15 U.S.C. § 1635, the Credit Repair Organizations Act, 15 U.S.C. § 1679b, and for breach of fiduciary duty. The case is before the Court on: (1) Freedom Mortgage Team Inc.'s ("Freedom") Federal Rule of Civil Procedure 12(b)(6) motion to dismiss; (2) Arturo Martinez's motion to reassign his case to this Court; and (3) plaintiffs' motion for leave to file a third amended complaint. For the

reasons set forth below, the Court denies Freedom's motion to dismiss, denies Martinez's motion to reassign, and grants plaintiffs' motion for leave to amend.

**Facts**

Plaintiffs are a married couple of Hispanic origin who own a home in Chicago. (Second Am. Compl. ¶¶ 4-5.) Neither is fluent in English. (*Id.* ¶ 6.)

Freedom is a mortgage broker. (*Id.* ¶ 7.) Defendant Graco Funes is an employee of Freedom. (*Id.* ¶ 8.) Defendant American Home Mortgage Corp. ("AHMC") is a mortgage originator and is the current owner of the loan plaintiffs contest. (*Id.* ¶¶ 9, 34.) Defendant American Home Mortgage Servicing, Inc. ("AHMS") is an affiliate of AHMC that services loans. (*Id.* ¶ 10.) AHMC and AHMS are now in bankruptcy. (*See* 9/12/07 Suggestion of Bankruptcy.) Defendant Mortgage Electronic Registration Systems, Inc. ("Mortgage Electronic") is a company that holds title to mortgages. (Second Am. Compl. ¶ 11.)[1]

In August 2006, plaintiffs contacted defendant Funes about refinancing their home. (*Id.* ¶ 16.) At the time, plaintiffs had two mortgage loans with Countrywide: (1) a conventional mortgage loan in the amount of $294,533.13 and an annual interest rate of 6.131 percent and (2) a home equity loan in the amount of $37,000.00 with an initial non-discounted annual interest rate of 9.125 percent. (*Id.* ¶ 21.) Funes told plaintiffs that they qualified for refinancing on the same terms as their loans from Countrywide. (*Id.* ¶ 20.) All of plaintiffs' discussions with Funes were conducted in Spanish. (*Id.* ¶ 22.)

---

[1] Defendants Probe and DiLuigi have apparently not been served.

All of the discussions at the closing were conducted in Spanish as well. (*Id.*) However, the closing documents with which plaintiffs were presented were written in English, and plaintiffs were not given Spanish translations. (*Id.* ¶ 23.) Those documents disclose a loan in the amount of $353,000.00 with an annual percentage rate of 9.249 percent. (*Id.* ¶¶ 23, 27.) Moreover, during the closing, defendants told plaintiffs that the loan had an initial 1.625 percent interest rate but did not tell plaintiffs that that rate would increase. (*Id.* ¶ 28.)

The loan application, which was written in English and prepared by Funes, overstated Mr. Pena's educational background, gross income and assets. (*Id.* ¶¶ 29-30.) Those misrepresentations enabled plaintiffs to qualify for a higher loan amount, which increased Funes' commission and the yield premium spread ("YSP") paid to Freedom. (*Id.* ¶ 31.)

Freedom collected a total of $15,443.00 in connection with the loan, a $3,794.00 brokerage fee from plaintiffs and a $11,649.00 YSP from AHMC. (*Id.* ¶¶ 36-39.) Plaintiffs say Freedom's compensation was "exorbitant and unreasonable" and the result of its practice of inducing minority borrowers to enter into loans with high interest rates to increase the fees and commissions it collects. (*Id.* ¶¶ 39-43.)

## Discussion

### Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by

3

a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [her] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation omitted).

Freedom first argues that all of plaintiffs' damage claims should be dismissed because they are mooted by their rescission claim. Moreover, it says that, under the doctrine of election of remedies, plaintiffs are required to choose between damages and rescission now. The Seventh Circuit has described the election of remedies doctrine as follows:

> The doctrine of election of remedies is . . . . based on the proposition that, when a party has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other.
>
> The so-called "inconsistency of remedies" is not an inconsistency between the remedies themselves . . . . [I]t means that a certain state of facts relied upon as the basis of a certain remedy is inconsistent with and repugnant to another certain state of facts relied upon as the basis of another remedy.
>
> When a certain state of facts under the law entitles a party to alternative remedies, both founded upon the identical state of facts, these remedies are not considered inconsistent remedies, though they may not be able to "stand together"; the enforcement of the one remedy being a satisfaction of the party's claim. In such case the invocation of the one remedy is not an election which will bar the other . . . .

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 228 (7th Cir. 1993) (quotation omitted). Thus, the doctrine applies, "only if the remedies elected are inconsistent," *i.e.*, "a party could not logically assume to follow one without renouncing the other." *In re Witte*, 841 F.2d 804, 806 n.4 (7th Cir. 1988) (quotation omitted).

4

Plaintiffs acknowledge that they cannot rescind the loan and pursue claims for "actual damages based on a discriminatorily or fraudulently inflated interest rate." (Pls.' Mem. Remedies at 9.) They contend, however, that those are the only damage claims that are inconsistent with rescission.

The Court agrees. In Count I, for example, plaintiffs assert that defendants violated the Fair Housing Act ("FHA") by charging them a higher interest rate than it charges non-minority borrowers. The FHA entitles plaintiffs to recover, in addition to out-of-pocket losses, compensation for intangible injuries like humiliation and emotional distress. *Phillips v. Hunter Trails Cmty. Ass'n*, 685 F.2d 184, 190 (7th Cir. 1982). Such intangible injuries would not be redressed by rescission. Moreover, though the Seventh Circuit has not decided the issue, at least one other circuit court of appeal has determined that an FHA plaintiff can recover punitive damages even if he cannot prove actual damages. *See Alexander v. Riga*, 208 F.3d 419, 430 (3rd Cir. 2000) (stating that it is "beyond a doubt" that punitive damages can be awarded in a FHA case even if no compensatory damages have been awarded). As a result, rescission will not moot all of plaintiffs' FHA claims.

The same is true for their Count II Equal Credit Opportunity Act ("ECOA") claim. Damages recoverable under the ECOA "include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation or embarrassment." *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982); *see Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983) (same). In addition, "punitive damages may be awarded even absent a showing of actual damages."

5

*Anderson*, 666 F.2d at 1278; *see Fischl*, 708 F.2d at 148 (same). Rescission will not moot these claims.

Portions of plaintiffs' Count III ICFA class claim and their Count IV ICFA individual claim would also survive rescission. The ICFA provides a private cause of action only to those who suffer "actual damage" as a result of deceptive practice. 815 Ill. Comp. Stat. 505/10a. Thus, punitive damages, which "are in addition to compensatory damages[,] . . . cannot be allowed unless actual damage is shown." *Hayman v. Autohaus on Edens, Inc.*, 734 N.E.2d 1012, 1015 (Ill. App. Ct. 2000) (quotation omitted). Actual damage, however, includes mental suffering. *See Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 600 N.E.2d 1218, 1228 (Ill. App. Ct. 1992) ("[T]he trial court did not err in awarding plaintiff damages under the Consumer Fraud Act in the amount of $750 for aggravation and inconvenience."); *see also Fleming-Dudley v. Legal Investigations, Inc.*, No. 05 C 4648, 2007 WL 952026, at *10 (N.D. Ill. Mar. 22, 2007) (stating in the context of an ICFA claim that "[i]t is well established in Illinois that actual damages include compensation for mental suffering" (quotation omitted); *Fogle v. William Chevrolet/GEO, Inc.*, No. 99 C 5960, 2000 WL 1129983, at *6 (N.D. Ill. Aug. 9, 2000) (noting that "a plaintiff can recover for intangible actual damages resulting from mental suffering, such as aggravation and inconvenience, under the ICFA"). Therefore, plaintiffs' claims that they, and a class of similarly situated consumers, suffered intangible damage as a result of defendants' violation of ICFA would be unaffected by rescission.

Plaintiffs' Count V Truth in Lending Act ("TILA") claim for statutory damages would also not be impacted. That statute explicitly states that aggrieved parties may

recover damages in addition to rescission: "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind." 15 U.S.C. § 1635(g); *see id.* § 1640 ("[A]ny creditor who fails to comply with any [TILA] requirement . . . is liable . . . [for] . . . any actual damage sustained by such person . . . ; [and] (3) . . . in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court; . . ."). Thus, by its terms, the Act permits TILA plaintiffs to seek both rescission and damages.

Part of plaintiffs' Count VI Credit Repair Organizations Act claim would survive rescission as well. Anyone who fails to comply with that statute shall be liable for actual damages, punitive damages and attorney's fees. 15 U.S.C. § 1679g. It is not clear whether actual damages include compensation for mental suffering. Regardless, however, plaintiffs could still recover punitive damages because "punitive damages under section 1679g(a)(2) are not merely ancillary to actual damages, but are instead an independent basis for relief." *Parker v. 1-800 Bar None, a Fin. Corp., Inc.*, No. 01 C 4488, 2002 WL 215530, at *8 (N.D. Ill. Feb. 12, 2002).

Count VII is plaintiffs' claim against Freedom and Funes for breach of fiduciary duty. Under Illinois law, a "victim of a breach of fiduciary duty may recover for emotional distress if the fiduciary had 'reason to know that a breach of [the] fiduciary duty [was] likely to cause emotional distress, for reasons other than pecuniary loss.'" *Dahlin v. Evangelical Child & Family Agency*, 252 F. Supp. 2d 666, 670 (N.D. Ill. 2002) (quoting *Doe v. Roe*, 681 N.E.2d 640, 650 (Ill. App. Ct. 1997)). To the extent

7

defendants breached their fiduciary duties knowing that doing so would likely cause plaintiffs emotional distress, plaintiffs' fiduciary duty claims will not be mooted by rescission.

Count VIII, the last count of plaintiffs' second amended complaint, is an FHA retaliation claim. Because this claim is premised on defendants' alleged investigation and defamation of plaintiffs in response to this suit, it would be unaffected by rescission of the mortgage loan.

In short, rescission of plaintiffs' loan would eliminate plaintiffs' claims for the out-of-pocket losses they suffered as a result of the allegedly inflated interest rates but none of their other damage claims. Given AHMC's filing of bankruptcy, however, it is not clear whether plaintiffs validly rescinded the loan. Given that uncertainty, and plaintiffs' ability to plead in the alternative, *see* Rule 8(a), the Court will not dismiss their claims for out-of-pocket losses at this time. If, at some future point, it is determined that the loan was rescinded or plaintiffs are able to elect rescission, Freedom may renew its motion with respect to these claims.[2]

Freedom also argues that all of plaintiffs' claims based on the allegedly inflated interest rates should be dismissed in light of *Culpepper v. Irwin Mortgage Corp.*, 491 F.3d 1260 (11th Cir. 2007). The plaintiffs in *Culpepper* brought a class action against a mortgage company alleging that its payment of YSPs to mortgage brokers violated

---

[2]Under the circumstances, however, the cross-motions of plaintiffs and AHMS, AHMC and Mortgage Electronic Registration Systems, Inc. for entry of an order regarding the specific procedures for rescission are premature. Accordingly, the Court strikes those motions without prejudice.

8

RESPA. *Id.* at 1262. The district court granted summary judgment for the defendant and plaintiffs appealed. *Id.*

The Eleventh Circuit affirmed the district court, but it did not, as Freedom seems to believe, hold that all YSPs are reasonable. Rather, it said that summary judgment was appropriate because plaintiffs had offered no evidence to suggest that the YSPs paid in connection with their loans were unreasonable, a prerequisite to liability under RESPA. *Id.* at 1274. Thus, *Culpepper* does not insulate Freedom from plaintiffs' challenges to the YSPs in this case.

Freedom also argues that the ICFA claims in Counts III and IV should be dismissed because they are based on its failure to translate the closing documents into Spanish, a step the statute does not require. Freedom's argument, however, is based on a crabbed reading of the complaint. The Count III class claim is based on Freedom's alleged practice of giving borrowers high interest rate loans so it can collect YSPs from lenders. (Second Am. Compl. ¶¶ 1-43, 68-73.) The Count IV individual claim is based on Freedom's alleged falsification of plaintiffs' loan documents and its failure to comply with 815 Ill. Comp. Stat. 505/2N. (*Id.* ¶¶ 82-87.) That section requires a mortgage broker who acts as a borrower's translator to present for the borrower's signature and in his native language the following form:

> This retail transaction or these negotiations were conducted in (language), which is my native language. I voluntarily choose to have the retailer act as my interpreter during the negotiations. The obligations of the contract or other written agreement were explained to me in my native language. I understand the contract or other written agreement.

*Id.* Because plaintiffs' ICFA claims are not premised on Freedom's failure to provide translated documents, they cannot be dismissed on that ground.

Freedom also contends that Counts III and IV are infirm because plaintiffs have not alleged that it engaged in an unfair or deceptive practice. A practice is unfair within the meaning of the ICFA if it (1) violates public policy; (2) is immoral, unethical, oppressive or unscrupulous; or (3) substantially harms consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). In Count III, plaintiffs allege that Freedom discriminates against Hispanic and African-American borrowers by giving them loans with unnecessarily high interest rates. (Second Am. Compl. ¶¶ 1-43, 68-73.) In Count IV, plaintiffs allege that, in addition to discriminating against them, Freedom falsified the information on their loan application and lied to them about the terms of the loan. (*Id.* ¶ 83.) Those alleged practices are unfair within the meaning of *Robinson*.

Next, Freedom argues that plaintiffs' Count VI CROA claim should be dismissed because it is not a credit repair organization within the meaning of the Act. The section of the statute that plaintiffs say Freedom violated, however, applies to all people, not just creditors or credit repair organizations. 15 U.S.C. § 1679b(a) (stating that *"[n]o person may . . . make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . any person . . . to whom the consumer has applied or is applying for an extension of credit . . . ."* (emphasis added)); *see Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 727 (N.D. Ill. 2005) (citing cases and stating that "[c]aselaw in this district teaches that, even where a plaintiff cannot prove that the

defendant is a credit repair organization within the meaning of section 1679a(3)(A) of the CROA, [he] . . . can nevertheless state a claim under section 1679b of the CROA" (quotation omitted)). Freedom's motion to dismiss Count VI is, therefore, denied.

Finally, Freedom argues that plaintiffs' FHA retaliation claim should be dismissed because the alleged conduct is not severe enough to be actionable. The FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" the rights provided by the statute. 42 U.S.C. § 3617. Intimidation does not, however, have to be violent to be actionable. *See Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004) (allegations that defendants had painted graffiti on a wall on plaintiffs' property, damaged some of their plants, cut down some of their holiday lights, removed their flyers offering a reward for information about the perpetrators of those acts, and applied chemicals to their yard against their wishes stated a claim under section 3617.) Plaintiffs allege that, after they filed this suit, Freedom had private investigators pose "a number of personal questions" about plaintiffs to their neighbors, friends and co-workers and made defamatory statements about plaintiffs to those people. (Second Am. Compl. ¶¶ 110-14.) It is reasonable to infer from these allegations that Freedom directed the investigators to say and do these things to pressure plaintiffs into dropping this suit or punish them for having filed it. Those allegations are sufficient to state an FHA retaliation claim.

## Motion to Reassign

Arturo Martinez, who has filed a similar case against Freedom, Funes and Encore Credit Corporation that is pending before Judge Shadur, asks the Court to recommend to the Executive Committee that his case be reassigned as related to *Pena*. Reassignments for relatedness are governed by Local Rule 40.4, which says that cases are related if, among other reasons, they involve "some of the same issues of fact or law." LR 40.4(a). According to the rule, a related case may be reassigned to another judge only if:

> (1) both cases are pending in this Court;
> (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
> (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
> (4) the cases are susceptible of disposition in a single proceeding.

LR 40.4(b).

Martinez charges Freedom and Funes with, among other things, violating the FHA, the ECOA and the ICFA by giving minority borrowers loans with unreasonably high interest rates so Freedom can collect YSPs from the lenders. (*See* Mot. Reassign, Ex. A, *Martinez* Compl. ¶¶ 11-51.) Thus, his case involves some of the same issues of fact and law as this case, satisfying the relatedness test of LR 40.4(a).

The reassignment criteria of LR 40.4(b), however, are not met. In this suit, unlike *Martinez*, two of the named defendants, AHMS and AHMC, are in bankruptcy. Consequently, as noted above, the claims against those entities, including plaintiffs' claim for rescission of the loan, are stayed. Moreover, the parties are currently briefing a motion to refer this case to the bankruptcy court. Thus, it is not clear when the claims in this suit will be adjudicated or by whom. What is clear, however, is that if *Martinez* is

12

reassigned to this Court the purpose of LR 40.4, to save judicial resources, will not be served because (1) if both cases stay here, adding the second suit to this class action with two bankrupt defendants will only complicate and delay the proceedings for both; and (2) if this suit is referred in whole or in part to the bankruptcy court, the two cases will still tax the resources of two different judges. Martinez's motion is, therefore, denied.

## Motion to File Third Amended Complaint

Plaintiffs seek leave to file a third amended complaint, adding Ramira and Noemi Ortega as plaintiffs, Aegis Wholesale Corporation and Countrywide Home Loans, Inc. as defendants and adding allegations and claims for appraisal fraud. The motion is granted.

## Conclusion

For the reasons set forth above, the Court holds that rescission of the mortgage will not moot all of plaintiffs' damage claims, denies Freedom's motion to dismiss and Martinez's motion to reassign [doc. nos. 60 & 92], grants plaintiffs' motion for leave to file a third amended complaint [doc. no. 42], and strikes as premature the cross-motions for entry of an order governing rescission procedures [doc. nos. 29 & 45].

SO ORDERED.   ENTERED: 10/24/07

HON. RONALD A. GUZMAN
United States District Judge

13